LYNN D. COLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cole v. Commissioner
Docket No. 7687-74.
United States Tax Court
T.C. Memo 1977-250; 1977 Tax Ct. Memo LEXIS 195; 36 T.C.M. (CCH) 1014; T.C.M. (RIA) 770250; July 28, 1977, Filed Lynn D. Cole, pro se. Willard N. Timm, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1969 and 1970 in the amounts of $30,805.49 and $3,301.27, respectively. The issues remaining for decision are as follows: (1) Whether petitioner and Dr. Cole can deduct $1,400 as depreciation on certain improvements *196 to their personal residence as property used in a trade or business under section 167. [1]
(2) Whether petitioner correctly computed their basis in 3,000 shares of stock sold in February 1969, under section 1012. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Santa Anna, California. Dr. Leland G. Cole and Mrs. Lynn D. Cole filed joint Federal income tax returns for the years 1969 and 1970. During the course of the audit by respondent of Dr. Cole and petitioner's return, Dr. Cole filed a petition with the United States Bankruptcy Court under Chapter XI of the Bankruptcy Act. Respondent made an immediate assessment of the proposed deficiency against Dr. Cole as required by section 6871(a) and filed a proof of claim in the bankruptcy proceeding. However, petitioner did not file a petition under the Bankruptcy Act with the Bankruptcy Court; therefore, the audit of petitioner was continued. *197 Dr. Cole is currently under the jurisdiction of the Bankruptcy Court and is therefore not a party to this case. During the years in issue Dr. Cole was self-employed as a consultant and promoter. When petitioner and Dr. Cole purchased a home in Huntington Harbor, California, Dr. Cole observed that their home and others in the development were underbuilt in relation to the cost of each individual lot. With this in mind, Dr. Cole contracted with a custom builder, with whom he had discussed a joint business venture of selling similar home improvements to neighbors, to construct improvements on his property. The improvements to their home included an overhanging deck in front of the house, a sophisticated security system, an air conditioning system, lighting and audio stero equipment and an elevator for the trash barrels. The cost of the alterations and improvements was $42,000. Dr. Cole and the builder did not enter into a business relationship. However, in an effort to interest others in the development to make similar improvements, Dr. Cole allowed the public to inspect his home. He advised any interested individual to contact the builder directly regarding the construction *198 of the improvements. Dr. Cole did not advertise publicly. The only advertising was by word of mouth. Five sales were made in the neighborhood by the contractor. Dr. Cole never received any compensation for any of the sales. Dr. Cole had been advised by his attorneys to delay entering into a formal business relationship with the builder until the builder was in a stronger financial position. Personal difficulties between petitioner and Dr. Cole in 1972 delayed indefinitely any additional activity in exploiting the residence for business purposes. Petitioner and Dr. Cole depreciated the $42,000 over 10 years, allocating one-third of the improvements to business use, or $1,400 per year. The $1,400 yearly depreciation was included within the $3,870.95 and the $3,598.48 business use of home deduction for the year 1969 and 1970, respectively. Respondent determined that petitioner was not using his home for his business and disallowed most of the deduction. The parties have since reached an agreement on all but the $1,400 depreciation deduction. In February 1962, while employed as a research scientist with Telecomputing Corporation, subsequently known as Whittaker Corporation, *199 Dr. Cole entered into a "Restricted Stock Option Agreement" with the corporation. The agreement granted Dr. Cole an option to purchase 7,500 shares of the common stock of Whittaker Corporation at $5.94 per share. The agreement was modified by an "Amendment of Restricted Stock Option Agreement" entered into on May 28, 1963. Under the terms of the amendment, the purchase price of 7,500 shares of Whittaker stock was reduced from $5.94 per share to $4.50, and Dr. Cole was allowed to purchase an additional 5,000 shares. On March 1, 1963, Dr. Cole purchased 200 shares of the common stock in Whittaker Corporation. On May 1, 1963, he purchased another 100 shares. Sometime prior to March 31, 1967, Dr. Cole turned over the 300 shares evidenced by three certificates to the stock brokerage firm of Bateman Eichler, Hill Richards, to be held in their account. On February 10, 1967, Dr. Cole purchased 7,500 shares of common stock of Whittaker Corporation. On March 3, 1967, Dr. Cole purchased another 1,000 shares of Whittaker stock resulting in his owning a total of 8,800 shares of Whittaker Corporation stock. Dr. Cole pledged the remaining 8,500 shares of stock to Security National Bank *200 (now Security Pacific National Bank) as security for a loan pursuant to an agreement dated February 8, 1967. The 8,500 shares of stock remained at all times from 1967 up to March 17, 1969, in the physical possession of the bank. In December 1967, Dr. Cole directed his stockbroker at Bateman Eichler, Hill Richards to sell 1,200 shares of Whittaker Corporation stock and then repurchase 1,200 shares. The broker completed the transaction. However, no delivery was made at the time with any of the 8,500 shares of Whittaker stock being held by Security Pacific National Bank to the broker and Dr. Cole had only 300 shares in his account at the brokerage firm. On February 24, 1969, Dr. Cole directed his stockbroker to sell 3,000 shares of Whittaker stock. The broker completed the transaction. At this time, the brokerage firm only held 300 shares of Whittaker stock for Dr. Cole. The 8,500 shares held by Security Pacific National Bank were not delivered to the brokerage firm until March 17, 1969. Whittaker stock split two-for-one in March 1969. At that time, Dr. Cole authorized Security Pacific National Bank to transfer to Bateman Eichler, Hill Richards the stock certificates for *201 the purpose of exchanging them for new certificates. Dr. Cole sold 2,500 shares of Whittaker stock during the period June 30, 1969, through October 31, 1969, and 8,186 shares in 1970. Respondent determined these shares had a basis of $2,14767 which reflects the two-for-one stock split and 3 percent stock dividend. Petitioner and Dr. Cole reported a long-term capital gain on their joint 1969 Federal income tax return. A portion of that gain was derived from the sale on February 24, 1969, of 3,000 shares of Whittaker Corporation stock. The basis of the 3,000 shares was computed by petitioner and Dr. Cole at $4.50 per share for 1,800 shares and $85.50 per share for 1,200 shares. Respondent determined the 1,200 shares of stock sold on February 24, 1969, had a basis of $4.50 rather than $85.50 basis as claimed by petitioner and Dr. Cole. OPINION The first issue is concerned with the $1,400 depreciation deduction taken by petitioner and Dr. Cole on their joint Federal income tax returns for the taxable years 1969 and 1970. Petitioner and Dr. Cole purchased a home in Huntington Harbor, California, and constructed numerous home improvements on the property costing a total of $42,000. *202 The improvements were constructed by a custom builder with whom Dr. Cole had discussed entering a joint business venture of selling similar improvements to homeowners in the neighborhood. Dr. Cole and the builder did not enter into a business relationship. He did allow the public to inspect his home and advised interested individuals to contact the builder directly. Five sales were made in the neighborhood. Dr. Cole never received any compensation for any of the sales. Petitioner and Dr. Cole claimed that one-third of the $42,000 expended for improvements should be allocated to business use and depreciated over 10 years. Petitioner contends that Dr. Cole was in the business of designing, constructing and selling home improvements and therefore, she is entitled to allocate a portion of the depreciation as a deduction for depreciation on the improvements as property use in the trade or business under section 167. Respondent contends that petitioner was not in the trade or business of designing, constructing and selling home improvements and, therefore, should not be allowed to deduct any of the depreciation. The determination of whether a taxpayer is engaged in a trade or business *203 must be made based on an examination of all the facts and circumstances. Industrial Research Products, Inc. v. Commissioner,40 T.C. 578 (1963). The term "trade or business" delineates activities which in a realistic and practical sense constitute a going trade or business. Corbett v. Commissioner,55 T.C. 884 (1971). Amounts expended in preparation to go into business at some indefinite future time are not deductible. Owen v. Commissioner,23 T.C. 377 (1954). The facts indicate that Dr. Cole was not engaged in the design or sale of home improvements as a business in 1969 and 1970. Dr. Cole testified that he started out the project to fix up his own home and the improvements would have been made whether or not it was a business because of the need for these items in his home. The record does not indicate Dr. Cole took any affirmative action to manifest his decision to undertake as a business the design or sale of home improvements, i.e., maintaining separate books and records, business stationary or cards, advertising, etc. Some sales of home improvements were made by the contractor as a result of Dr. Cole's referrals. However, *204 Dr. Cole did not receive any income from the sales. Furthermore, Dr. Cole did not enter into a business relationship with the contractor in 1969 or 1970 because of the contractor's unstable financial condition. These facts indicate, at most, that Dr. Cole may have planned to enter into the home improvements business in the future, but was not in the business during the years in issue. Accordingly, the depreciation of the home improvements was properly disallowed by the respondent. The second issue involves the basis of certain securities sold by Dr. Cole in 1969. Dr. Cole purchased 8,800 shares of Whittaker Corporation stock pursuant to a stock option agreement at $4.50 per share between March 1963 and February 1967. Prior to March 1967, Dr. Cole turned over 300 shares to his stockbroker to be held in his account. The certificates for the remaining 8,500 shares were held by Security Pacific National Bank as collateral for a loan from 1967 to March 1969. Dr. Cole sold 1,200 shares in December 1967 and 3,000 shares in February 1969. Petitioner and Dr. Cole claimed a long-term capital gain on their joint Federal income tax return for the taxable year 1969. A portion of that *205 gain was derived from the February 1969 sale of 3,000 shares of Whittaker Corporation stock. The basis of the 3,000 shares was computed by petitioner and Dr. Cole as $4.50 per share for 1,800 shares and $85.50 per share for 1,200 shares. The basis of $85.50 per share for 1,200 shares was predicated on the reported cost of 1,200 shares purchased on December 1967, as a result of directions given to Bateman Eichler, Hill Richards to sell 1,200 shares of Whittaker stock and then repurchase 1,200 shares. Both the sales price and the purchase price were $85.50.Petitioner asserts that these 1,200 shares which were sold and repurchased were part of the 8,500 shares held by Security Pacific National Bank, 3,000 of which were sold in February 1969. Petitioner contends that Dr. Cole's placing an order with his broker to sell 1,200 shares of Whittaker stock held by Security Pacific National Bank was all that was necessary to complete the December 1967 transaction and that it was not necessary to physically deliver the certificates from Security Pacific National Bank to the brokerage firm. The respondent contends that the December 1967 back-to-back transaction was a completed transaction *206 and did not involve any of the 8,500 shares of stock held by Security Pacific National Bank and later sold in 1969. Respondent, therefore, has determined that under section 1012 the basis of the stock sold in 1969 is $4.50 per share. In December 1967, when Dr. Cole placed an order with his broker to sell 1,200 shares of Whittaker stock, the brokerage firm held 300 shares of Whittaker stock in Dr. Cole's account. Dr. Cole's remaining 8,500 shares remained in the possession of Security Pacific National Bank until March 1969. The broker could not deliver any of the 8,500 shares of stock held by Security Pacific National Bank pursuant to the sale of 1,200 shares in December 1967, unless Dr. Cole delivered to the broker certificates for the shares he intended to sell. See ANN. CAL. COMM. CODE § 8314 (West 1964). Dr. Cole did not make delivery of any of the 8,500 shares to his broker with which his broker could cover the sale. Accordingly, when the broker completed the sale of 1,200 shares of Whittaker stock on December 29, 1967, he must have made delivery with the 300 shares in Dr. Cole's account and 900 shares which were "borrowed" from the brokerage firm's *207 account. As to the 900 shares, this transaction, being one in which the sale was consummated by delivery of securities which were borrowed for the account of the seller, constituted a short sale as defined by the Securities and Exchange Commission, 17 C.F.R. sec. 240.3b-3 (1976). When settlement was made on the purchase of 1,200 shares of Whittaker stock purchased 20 minutes after the sale, 300 of the shares were credited to Dr. Cole's account and 900 shares were credited to the brokerage firm's account to replace the borrowed shares. As a result of this transaction, the newly acquired 300 shares held in Dr. Cole's account had a basis of $85.50 per share. On February 24, 1969, Dr. Cole placed an order with his broker to sell 3,000 shares of Whittaker stock. On the settlement date of the sale, the brokerage firm still had only 300 shares of Whittaker stock in Dr. Cole's account. Accordingly, on that date, the only shares of Dr. Cole's Whittaker stock the brokerage firm could deliver was the 300 shares which they held for him in their account. The broker must have covered the 2,700 remaining shares sold on that date with a loan to Dr. Cole of 2,700 *208 shares of Whittaker stock held by the brokerage firm, thereby creating another short sale of the 2,700 shares. The short sale was closed on March 17, 1969, when the certificates which had been held by Security Pacific National Bank were delivered to the brokerage firm. Dr. Cole's basis in the shares delivered on March 17, 1969, was $4.50 per share. Accordingly, Dr. Cole's basis in 300 of the shares sold in February 1969 was $85.50 per share. The basis in the remaining 2,700 shares which were delivered to cover the remaining shares sold in February 1969 was $4.50 per share. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩